

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:10-cr-212-T-27EAJ

BRIAN MATTY HAGEN

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Brian Albritton, United States Attorney for the Middle District of Florida, and the defendant, Brian Matty Hagen, and the attorney for the defendant, Adam Allen, mutually agree as follows:

A. **Particularized Terms**

1. Count(s) Pleading To

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with bank fraud, in violation of 18 U.S.C. §1344.

2. Maximum Penalties

Count One carries a maximum sentence of 30 years imprisonment, a fine of up to $1,000,000, a term of supervised release of not more than 5 years, and a special assessment of $100 per felony count. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First: That the defendant attempted to execute a scheme to obtain money, assets, or property from a financial institution by means of false ore fraudulent pretenses, representations, or promises relating to a material fact;

Second: That the defendant did so willfully with an intent to defraud;

Third: That the false or fraudulent pretenses, representations, or promises were material; and

Fourth: That the financial institution was federally insured.

4. Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement related to the conduct giving rise to this plea agreement.

6. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's

applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8. Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle

District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10. Cooperation - Responsibilities of Parties

a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

Defendant's Initials 

(1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3) The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this

agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4) The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5) The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

11. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(2), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, a money judgment in the amount of $2,500.00, representing the amount of proceeds obtained as a result of the offense described in Count One of the Information. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the amount of the proceeds is $2,500.00 and enter an order of forfeiture. Pursuant to Rule 32.2(b)(4)(A), the defendant agrees that the order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees that the United States shall, at its option, be entitled to forfeiture of any property (substitute assets) of the defendant up to the value of $2,500.00 in order to satisfy the money judgment. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant agrees to take whatever steps are necessary to pass clear title to the United States of any assets sought to satisfy the money judgment. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property which could be used to satisfy the money judgment and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions

thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## B. **Standard Terms and Conditions**

### 1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987), including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

Defendant's Initials ______

4. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5. Defendant's Waiver of Right to Appeal and Right to Collaterally Challenge the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence

exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

6. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature

of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

FACTS

Between September 2009 and April 7, 2010, the defendant, BRIAN MATTY HAGEN, lived and worked in the Middle District of Florida. HAGEN was an employee of Bank of America (hereinafter BOFA) working in a customer call center. His job entailed responding to telephone calls from BOFA customers who had questions about their accounts. In this capacity, Hagen had access to protected account and customer information, including account numbers, dates of birth, security codes, verbal passwords, social security numbers, tax ID numbers, and addresses of account holders, among other things. BOFA is a national banking association and a financial institution as defined by 18 U.S.C. § 20; that is, BOFA is an insured depository institution with deposits insured by the Federal Deposit Insurance Corporation.

On or about March 10, 2010, Hagen and third party met with an undercover FBI agent (hereinafter UCA #1), at a restaurant in Sun City, in the Middle District of Florida. The purpose of this meeting was for Hagen to meet UCA #1, whom Hagen believed could exploit the protected BOFA customer information Hagen had collected. Hagen told UCA #1 that he worked for BOFA in a call center and had access to bank account information via his BOFA computer terminal.

At the meeting, Hagen provided UCA #1 with the name, date of birth, mailing address, tax identification number, and telephonic password for BOFA customer S.C. A check with BOFA revealed that, at the time of this meeting, BOFA customer S.C. had an account balance of approximately $500,077.19.

Also at the meeting, Hagen and UCA #1 discussed the various ways in which the money could be stolen from this account, including transferring funds to another

account and establishing credit cards with the customer information Hagen provided. Hagen advised UCA #1 to take all the money from the account at once because if the bank or the customer noticed money was taken from the account, the account would be closed down. Hagen also told UCA #1 that he could get similar information for other BOFA customers "pretty quick," but would not bother with any account that had less than $100,000 in it. Hagen told UCA #1 that he expected "at least half" of any stolen funds in return for providing the account holder information and that he wanted to be paid in cash. At the conclusion of the meeting, Hagen stated that he had bank account information for two additional accounts at his residence. According to Hagen, each of these accounts had over $100,000 in it.

On or about March 11, 2010, UCA #1 and Hagen met at a restaurant in the Middle District of Florida. At the meeting, Hagen provided UCA #1 with the name, account numbers, date of birth, address, other accounts held, length of time the account had been open, and account balances for BOFA customer E.H.S. Hagen told UCA #1 that this BOFA customer had called into the BOFA call center and spoken to Hagen to ensure that his/her automatic payments to NetFlix had stopped. Hagen stated that this customer's checking account had a balance of approximately $305,000. A check with BOFA revealed that, around the time of this meeting, BOFA customer E.H.S. had an account balance of approximately $444,736.45. BOFA security officials also confirmed that Hagen had accessed E.H.S.'s account data in the days prior to the March 11, 2010 meeting.

Also at this meeting, Hagen told UCA #1 that he planned to keep working at BOFA even after the money was stolen from the aforementioned account. UCA #1

asked if they could do the same thing again. Hagen answered "Yeah. If this goes smooth, which it better for all our sakes, then yeah. Absolutely." UCA #1 and Hagen agreed that Hagen would receive 25% of any monies illegally withdrawn from this account. Hagen made it clear that he wanted payment in cash.

On or about March 16, 2010, UCA #1 called Hagen and told him that he (UCA #1) had opened some credit card accounts with the information Hagen provided and "busted them out," meaning he used them to get cash advances. UCA #1 stated that he had some money to give Hagen in exchange for the information he had provided and Hagen indicated he would give UCA #1 more account information the next time they met. UCA #1 and Hagen agreed meet on March 18, 2010.

On or about March 18, 2010, UCA #1 called Hagen and explained that he was stuck in the Miami area but he had an employee, UCA #2, that could deliver the money to Hagen in his stead. Hagen told UCA #1 that he did not have any more protected customer information yet because he had not been to work in the last few days, but expected to get more account holder information and would give it to UCA #1 in the near future. Hagen also agreed to meet with UCA #2 to receive his cash payment.

On or about March 18, 2010, UCA #2 met with Hagen at a location in the Middle District of Florida for the purpose of paying Hagen his share of the profits realized from the exploitation of the protected customer data Hagen provided during the March 11, 2010 meeting with UCA #1. At this meeting, Hagen told UCA #2 that he would have more protected account holder information for UCA #1 in a week. Hagen then accepted an envelope from UCA #2 that contained $2,500 in cash.

On or about April 5, 2010, UCA #1 called Hagen and asked whether Hagen would like to meet again. Hagen stated that he would like to meet and had more BOFA customer account data to give to UCA #1. UCA #1 told Hagen that UCA #2, who had previously delivered cash to Hagen, would also be in the area and would have more money for Hagen.

On or about April 7, 2010, Hagen met with UCA #2 at a restaurant in the Middle District of Florida. At that time, UCA #2 disclosed to Hagen that he was an FBI agent and that the FBI had warrants to search Hagen's person and residence. Hagen voluntarily produced from his pocket a piece of paper containing the social security number, account number, address, date of birth and what appeared to be a driver's license number for BOFA customer J.M. A check with BOFA revealed that J.M.'s account had been closed due to fraud on the account shortly before this time and, consequently, had an account balance of $0.

Hagen then traveled with law enforcement officers to his residence in the Middle District of Florida. A search of the residence revealed the account information for S.C. and E.H.S. Hagen had previously provided to UCA #1, as well as the name, account number, address, social security number, and driver's license number for BOFA account holder S.H. A check with Bank of America revealed that around this time, S.H. had an account balance of approximately $356,113.48.

The total amount of potential loss, i.e., the total amount of funds in the BOFA accounts for which Hagen misappropriated and provided protected customer and account data to UCA #1 and UCA #2, is approximately $1,300,927.12.

10. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

11. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 25 day of April, 2010.

BRIAN MATTY HAGEN
Defendant

ADAM ALLEN, AFPD
Attorney for Defendant

A. BRIAN ALBRITTON
United States Attorney

By: AMANDA L. RIEDEL
Assistant United States Attorney

ROBERT T. MONK
Assistant United States Attorney
Deputy Chief, Economic Crimes Section